UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Christopher Shaimas,            :
          Plaintiff,            :
                                :
     v.                         :     File No. 1:07-CV-26
                                :
Catholic Diocese of Burlington, :
Camp Tara, Catholic Charities   :
of Vermont, Woodside Detention  :
Center, John Does 1 and 2,      :
          Defendants.           :

OPINION AND ORDER
(Papers 12, 14, 15 and 16)

     Plaintiff Christopher Shaimas brings this action claiming
that he was sexually abused by Catholic clergymen when he was
a boy, and again as a young man.  The alleged perpetrators are
defendants, but have not yet been identified by name.  Shaimas
is currently incarcerated and is proceeding *pro se*.

     The complaint alleges both constitutional and tort
violations.  Several defendants have moved to dismiss under
Rules 12(b)(1) and 12(b)(6).  For the reasons set forth below,
the motions are GRANTED and the claims against these
defendants are DISMISSED without prejudice.

Factual Background

     For the limited purpose of the pending motions to
dismiss, the allegations in the plaintiff's complaint will be
accepted as true.  In the summer of 1982, Shaimas attended
Camp Tara in Colchester, Vermont.  He was eight years old at
the time.  While attending the camp, a parish priest requested

that he come to chapel alone for instruction on how to accept communion.  When Shaimas arrived, the priest allegedly locked the door of the chapel and proceeded to abuse him sexually. Although the priest did not abuse Shaimas again that summer, he abused him several times when Shaimas returned to the camp the next summer.

Shaimas also claims that he was abused by a Catholic chaplain several years later.  When Shaimas was 17 years old, he was in the care and custody of the Woodside Juvenile Rehabilitation Center[1] ("Woodside").  While at Woodside, he received private counseling from a Catholic Army chaplain. The complaint alleges that during the counseling sessions, the chaplain spoke of his own sexual practices with other men.  He also hugged Shaimas, rubbed his back, and told him that he had "feelings" for him.

After one year of counseling with the chaplain, the sessions came to an abrupt stop.  Approximately one year later, when Shaimas was 19 years old, the chaplain called him and asked him to go to dinner.  After dining at a restaurant, the men returned to the chaplain's car.  Once in the car, the chaplain allegedly tried to molest Shaimas.  Shaimas stopped him, and the chaplain drove him home.

---

[1]  Named in the complaint as the Woodside Juvenile Detention Center.

2

Shaimas is currently incarcerated in Kentucky, but claims citizenship in Vermont.  He brings his allegations under 42 U.S.C. § 1983 and tort law, and claims that this Court has both federal question and diversity jurisdiction.  The defendants include the Roman Catholic Diocese of Burlington; Vermont Catholic Charities; Camp Tara; Woodside; and the two unnamed perpetrators.  Because the individual perpetrators have not been identified, they have not been personally served with a copy of the complaint.

Discussion

I.  <u>Motion to Dismiss Standard</u>

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. <u>See</u> <u>Cleveland v. Caplaw Enterp.</u>, 448 F.3d 518, 521 (2d Cir. 2006); <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 100 (2d Cir. 2005).  The appropriate inquiry is "not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." <u>Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co.</u>, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks omitted). As plaintiff in this case is proceeding *pro se*, the Court will "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." <u>Weixel v. Bd. of Educ.</u>

3

of the City of N.Y., 287 F.3d 138, 145-46 (2d Cir. 2002)
(quoting Cruz v. Gomez, 202 F.3d 593, 597 (2d Cir. 2000)).

With respect to subject matter jurisdiction, "[a] case is
properly dismissed for lack of subject matter jurisdiction
under Rule 12(b)(1) when the district court lacks the
statutory or constitutional power to adjudicate it." Makarova
v. United States, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R.
Civ. P. 12(b)(1).  In addition to the allegations in the
complaint, a district court reviewing the issue of subject
matter jurisdiction may consider evidence outside of the
pleadings, including affidavits.  Makarova, 201 F.3d at 113;
Antares Aircraft, L.P. v. Fed. Rep. of Nigeria, 948 F.2d 90,
96 (2d Cir. 1991).

II.  Subject Matter Jurisdiction

The Roman Catholic Diocese and Vermont Catholic Charities
have each moved to dismiss, arguing that there is no diversity
of citizenship and that Shaimas has failed to state a viable
federal claim against them.

A.  Diversity Jurisdiction

In order for there to be diversity jurisdiction under 28
U.S.C. § 1332(a), "'all of the parties on one side of the
controversy must be citizens of different states from all of
the parties on the other side.  To put it another way, the
citizenship of each plaintiff must be diverse from the

4

citizenship of each defendant.'" <u>Colon v. Bernabe</u>, 2007 WL 2068-93, at *2 (S.D.N.Y. July 19, 2007) (quoting 32A Am. Jur. 2d *Federal Courts* § 636).  For purposes of diversity jurisdiction, a person's citizenship is determined by his domicile, which is defined as the state in which he is both present and intends to remain for the indefinite future.  <u>See Mississippi Band of Choctaw Indians v. Holyfield</u>, 490 U.S. 30, 48 (1989).  In determining the domicile of a prisoner, courts have held that the prisoner's domicile before he was imprisoned is presumed to be his domicile while he is in prison.  <u>See</u> <u>Sullivan v. Freeman</u>, 944 F.2d 334, 337 (7th Cir. 1991) (citations omitted), <u>cert.</u> <u>denied</u>, 513 U.S. 1060 (1994); <u>see</u> <u>also</u> <u>Collazo-Portillo v. D'Avirro</u>, 2007 WL 1614527, at *3 (D. Conn. May 29, 2007).  For corporations, domicile is based on the place of incorporation and the corporation's principal place of business.  <u>See</u> <u>Carbotrade S.p.A. v. Bureau Veritas</u>, 99 F.3d 86, 92 (2d Cir. 1996).

In this case, Shaimas claims that he is a Vermont citizen incarcerated out of state.  Therefore, the Court deems his domicile to be in Vermont.  The Roman Catholic Diocese has submitted an affidavit from its Chancellor, attesting to the fact that the Diocese is a Vermont corporation with operations and offices solely within the State of Vermont.  Catholic Charities of Vermont has submitted a similar affidavit from

its Executive Director, stating that her organization is a
Vermont corporation with operations and offices solely within
Vermont.  Accordingly, the plaintiff and at least two
defendants are from the same state, and there is no factual
basis for the assertion of diversity jurisdiction.

     B.  <u>Federal Question Jurisdiction</u>

     The Roman Catholic Diocese and Vermont Catholic Charities
also argue that they are not liable for constitutional
violations under 42 U.S.C. § 1983 because they are not state
actors.  To succeed on a 42 U.S.C. § 1983 claim, a plaintiff
must show that a defendant, acting under the color of state
law, deprived the plaintiff of a constitutional right.  <u>See
Rendell-Baker v. Kohn</u>, 457 U.S. 830, 838 (1982); <u>Rodriguez v.
Phillips</u>, 66 F.3d 470, 481 (2d Cir. 1995).  When a defendant
is a private entity, the plaintiff must show that "there is
'such a close nexus between the State and the challenged
action' that seemingly private behavior 'may be fairly treated
as that of the State itself.'"  <u>Tancredi v. Metro Life Ins.
Co.</u>, 316 F.3d 308, 312 (2d Cir. 2003) (quoting <u>Brentwood Acad.
v. Tenn. Secondary Sch. Athletic Ass'n</u>, 531 U.S. 288, 295
(2001)).

     Shaimas claims that his mother contacted Vermont Catholic
Charities to arrange for his attendance at Camp Tara.  He
claims that the priest who abused him at Camp Tara belonged to

the Diocese.  He makes no allegation that either the Diocese or Vermont Catholic Charities acted under color of state law or in "close nexus" with the State itself.  He has therefore failed to assert a viable § 1983 claim against them.

Given that Shaimas's only other legal allegations sound in tort law, there is no federal question before the Court with respect to these defendants.  Shaimas nonetheless alleges that the Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.[2]  Section 1331 requires a federal question.  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.")[3]  Without a colorable claim "arising under" the Constitution or law of the United States, § 1331 is inapplicable.  See Arbaugh v. Y & H Corp., 126 S. Ct. 1235, 1244 (2006).

Equally inapplicable is § 1343, which reads in relevant part:

> The district courts shall have original
> jurisdiction of any civil action authorized by law
> to be commenced by any person:

---

[2]  The complaint erroneously cites these statutes as 42 U.S.C. §§ 1331 and 1343.

[3]  Jurisdiction may also exist where the resolution of a state claim necessarily turns on the construction of federal law.  Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 808, 813-14 (1986) (citations omitted).  Shaimas's abuse claims do not involve any such construction.

(1) To recover damages for injury to his person or property, or because of the deprivation of any right or privilege of a citizen of the United States, by any act done in furtherance of any conspiracy mentioned in section 1985 of Title 42;

(2) To recover damages from any person who fails to prevent or to aid in preventing any wrongs mentioned in section 1985 of Title 42 which he had knowledge were about to occur and power to prevent;

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;

(4) To recover damages or to secure equitable or other relief under any Act of Congress providing for the protection of civil rights, including the right to vote.

28 U.S.C. § 1343(a).  Shaimas does not allege violations under 42 U.S.C. § 1985, has failed to claim any conduct by the Diocese of Vermont Catholic Charities "under the color of any State law," and does not state viable claim under "any Act of Congress."  Id.  Therefore, this Court has no subject matter jurisdiction with respect to defendants Roman Catholic Diocese and Vermont Catholic Charities, and their motions to dismiss are GRANTED.[4]

---

[4]  As discussed below, not all federal claims are being dismissed at this time.  Nonetheless, because the state law tort allegations will be the predominant claims in the case, the Court declines to exercise pendent jurisdiction over those claims.  See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26 (1966).

III.   Eleventh Amendment Immunity

Woodside has also filed a motion to dismiss.  Woodside is operated by Vermont's Department for Children and Families, which is a division of Vermont's Agency of Human Services. See 33 V.S.A. §§ 5801; 3 V.S.A. §§ 3002, 3084.  Because it is part of a state agency, Woodside asserts sovereign immunity under the Eleventh Amendment.  Woodside also argues that it is not a "person" under § 1983, and that Shaimas has failed to state a claim for which relief may be granted.

The Eleventh Amendment provides that: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI. The Supreme Court has consistently held that this amendment prohibits a private party from suing a state in federal court unless Congress unequivocally expresses its intent to abrogate that immunity or a state waives its immunity. See Edelman v. Jordan, 415 U.S. 651 (1974); In re Charter Oak Assocs., 361 F.3d 760, 765 (2d Cir. 2004).  This jurisdictional bar applies "whether the relief sought is legal or equitable," Papasan v. Allain, 478 U.S. 265, 276 (1986), and encompasses actions against the state itself and actions against a state's agencies, agents or instrumentalities, Regents of the Univ. of

<u>California v. Doe</u>, 519 U.S. 425, 429 (1997).  One exception is
if the plaintiff seeks prospective injunctive relief from a
specific state officer.  <u>Edelman</u>, 415 U.S. at 677; <u>Huang v.
Johnson</u>, 251 F.3d 65, 69-70 (2d Cir. 2001).

     Being part of a state agency, Woodside is clearly
eligible for protection under the State's sovereign immunity.
There is no indication in § 1983 that Congress intended to
abrogate state sovereign immunity.  In fact, the Supreme Court
has specifically held that Congress did not intend to override
well-established immunities such as state sovereign immunity
when it enacted § 1983.  <u>See</u> <u>Will v. Michigan Dep't of State
Police</u>, 491 U.S. 58, 67 (1989).  It is equally clear that
Vermont has not waived its sovereign immunity under § 1983.
<u>See</u> 12 V.S.A. § 5601(g) (Vermont Tort Claims Act reserves
Eleventh Amendment immunity for all claims not explicitly
waived).  Finally, as Woodside appropriately argues, state
agencies are not considered "persons" subject to liability
under § 1983.  <u>See</u> <u>Will</u>, 491 U.S. at 70.  Consequently,
Woodside's motion to dismiss is GRANTED.

IV.  <u>Remaining Parties</u>

     The remaining defendants are the two unnamed perpetrators
and Camp Tara.  According to the affidavit submitted by the
Diocese, Camp Tara was a corporation "separate and distinct"
from the Diocese, and was dissolved in 2004.  It is not clear

10

whether, despite Camp Tara's dissolution, Shaimas wishes to pursue his claims against it.[5]

Of these three defendants, only one, the chaplain who provided counseling at Woodside, was arguably a state actor. Indeed, there is no allegation that either Camp Tara or any clergy affiliated with the camp were acting under color of state law or in close connection with the State of Vermont. Consequently, as with the Diocese and Vermont Catholic Charities, there is no valid federal question with respect Camp Tara and its unnamed priest, and the Court has no subject matter jurisdiction over the claims brought against these defendants. See Tancredi, 316 F.3d at 312; see also Manway Constr. Co., Inc. v. Hous. Auth. of City of Hartford, 711 F.2d 501, 503 (2d Cir. 1983) (court may raise question of subject matter jurisdiction *sua sponte*).

As to the unnamed chaplain, counsel for Woodside[6] has submitted a motion to dismiss claiming official capacity immunity and lack of adequate service. The official capacity immunity argument has clear merit, and any claims for damages against the Army Chaplain in his official capacity are

---

[5]   In response to the various motions to dismiss, Shaimas has only opposed the motions filed by Woodside and John Doe Army Chaplain.  (Paper 17).

[6]   Woodside is represented by the Office of the Vermont Attorney General.

11

DISMISSED.  See Davis v. New York, 316 F.3d 93, 101-02 (2d
Cir. 2002).  Dismissal for lack of proper service, however,
would be premature.

Since Shaimas is proceeding pro se and in forma pauperis,
the Court has ordered the United States Marshals Service
("USMS") to serve all defendants.  The Second Circuit has held
that pro se litigants proceeding in forma pauperis are
entitled to rely on service by the USMS.  Romandette v.
Wheetabix Co., 807 F.2d 309, 311 (2d. Cir. 1986).  However,
the plaintiff is required to provide the information necessary
for the Marshals to effect service.  See Byrd v. Stone, 94
F.3d 217, 220 (6th Cir. 1996); Dumaguin v. Sec'y of HHS, 28
F.3d 1218, 1221 (D.C. Cir. 1994); Gustaff v. MT Ultimate
Healthcare, 2007 WL 2028103, at *3 (E.D.N.Y. June 21, 2007).
The USMS cannot investigate a defendant's identity or
whereabouts, nor can the Court.

The only service upon the chaplain thus far has been the
delivery of a summons and complaint to Woodside's current
director.  Shaimas received counseling from the unnamed
chaplain at Woodside approximately 16 years ago.  Given this
significant lapse in time, the Court will not presume that
Woodside's director is an authorized agent for purposes of
personal service on the chaplain pursuant to either Federal

Rule of Civil Procedure 4(e) or Vermont Rule of Civil Procedure 4(d).

     With all other defendants having been dismissed, this case cannot continue without proper service upon the chaplain. If Shaimas wishes to pursue a federal claim against the chaplain, he must provide sufficient information for the USMS to accomplish personal service.  The Court will allow Shaimas 45 days in which to furnish this information to the USMS, with a copy to the Court.  If no such information is provided to the USMS within that time, the claims against the chaplain will be DISMISSED without prejudice and this case will be closed.

<u>Conclusion</u>

     For the reasons set forth above, the motions to dismiss filed by Vermont Catholic Charities, Inc. (Paper 12), Woodside Juvenile Rehabilitation Center (Paper 14) and the Roman Catholic Diocese of Burlington (Paper 16) are GRANTED.  All claims against these defendants are DISMISSED without prejudice.  All claims against Camp Tara and the unnamed priest at Camp Tara are also DISMISSED without prejudice.

     The motion to dismiss filed by John Doe Army Chaplain (Paper 15) is GRANTED in part and DENIED in part.  All claims for damages against this defendant in his official capacity are DISMISSED.  The remaining claims against this defendant

will not be dismissed at this time.  However, Shaimas must
provide the USMS with sufficient information about this
defendant's name and location for the USMS to serve him
personally.  Failure to provide such information within 45
days will result in the dismissal of all claims against this
defendant without prejudice.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this
6th day of August, 2007.


/s/ J. Garvan Murtha
J. Garvan Murtha
United States District Judge